### FREY v SCOTT

Docket No. 193048. Submitted March 11, 1997, at Detroit. Decided June 20, 1997, at 9:25 A.M.

Kerry and Christine Frey and Louis J. Szepietowski brought an action in the Jackson Circuit Court against Donald L., Richard D., and Peggy A. Scott, the Departments of Treasury and Natural Resources, and the Jackson County Treasurer, seeking easement rights or a declaration that they continue to have easement rights over a lot the Scotts purchased at a tax sale. The plaintiffs and the Scotts are owners of adjoining lots in a platted subdivision, and the easement rights in question are for access by the plaintiffs to a public road. Such an easement had been granted by the original owner of the Scotts' lot. The court, Charles A. Nelson, J., granted summary disposition for the defendants, ruling that the action was filed beyond the six-month statutory period of limitation and that the original easement was extinguished when the Scotts' lot was acquired by the state for nonpayment of taxes. The court, however, granted the plaintiffs an easement by necessity, which was limited to foot traffic. The court also ruled that the Scotts' lot remains subject to the public's rights of ingress and egress as reserved in the deed from the DNR to the Scotts pursuant to 1909 PA 280, MCL 322.212; MSA 13.441. The plaintiffs appealed.

The Court of Appeals *held*:

1. The plaintiffs' action was time-barred under MCL 211.358e; MSA 7.958(5) and MCL 211.431; MSA 7.661.

2. At the time the state acquired the Scotts' lot for nonpayment of taxes, the law pursuant to *Moceri v St Clair Shores*, 366 Mich 380 (1962), provided that an easement was terminated when the servient tenement was conveyed to the state. Thus, the original easement in this case had terminated with the conveyance of the Scotts' lot to the state.

3. The record in the trial court provides insufficient facts for appellate review of the trial court's decision to grant an easement by necessity. The matter must be remanded so that the trial court can consider the purpose and character of the easement and ensure the proper enjoyment of the easement with as little burden as possible to the owners of the servient tenement.

4. The trial court record provides an insufficient basis for appellate review of whether the trial court properly determined that the Scotts' lot is subject to public access as land along a watercourse pursuant to 1909 PA 280.

Affirmed in part and remanded.

*Larry G. Sharp*, for Kerry and Christine Frey and Louis J. Szepietowski.

*Rappleye & Wilkins, P.C.* (by *Willard R. Rappleye*) (*Jerrold Schrotenboer*, of Counsel), for Donald L. Scott and others.

*Bullen, Moilanen, Klaasen & Swan, P.C.* (by *David W. Swan*), for Jackson County Treasurer.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Kevin T. Smith*, Assistant Attorney General, for the Departments of Treasury and Natural Resources.

Before: WAHLS, P.J., and HOOD and JANSEN, JJ.

PER CURIAM. Plaintiffs appeal as of right from a February 16, 1996, order of the Jackson Circuit Court granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7) (claim barred by statute of limitations) and MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted). We affirm in part and remand for further proceedings.

This case arises out of a dispute concerning certain land located in Henrietta Township. Specifically, this case concerns certain plats located in the Pleasant Bay Estates. Kerry and Christine Frey, who are married, are owners of lot 89 and lot 90. With respect to lot 89, the deed is dated August 23, 1993, and the deed was given in fulfillment of a land contract dated April 10, 1987. The Freys own lot 90 through a land

contract dated April 24, 1987. Louis Szepietowski is the owner of lot 91, the deed to which was recorded on June 20, 1978.

North of plaintiffs' land is a small strip of land referred to as outlot C. Outlot C was deeded to the State of Michigan on June 3, 1985. Bertine Carpenter had previously owned outlot C. Carpenter, John C. Barnes, Jr., Delores Barnes, and the J. C. Barnes Construction Co., Inc., as proprietors, jointly dedicated the plat of Pleasant Bay Estates on July 22, 1964. That dedication included a private easement for a twenty-foot-wide section for ingress and egress for lots 82 through 89. Further, outlot C was for the exclusive use of owners of lots in the Pleasant Bay Estates. However, outlot C was deeded to the state following a tax sale. Notice of the tax sale was given only to the J. C. Barnes Construction Co., Inc., although it was never a record title holder of outlot C. Plaintiffs did not receive notice of the tax sale. The state then held a scavenger's sale, and Donald and Richard Scott purchased outlot C at the sale from the Department of Natural Resources (DNR). The Scotts' deed is dated March 16, 1989.[1]

Outlot C provides lots 89, 90, and 91 access to Clyde James Road, which is the nearest public street within the plat. Therefore, the most reasonable means of ingress and egress from lots 89, 90, and 91 to a public street is by outlot C. The Scotts had denied plaintiffs use of outlot C to gain access to their lots. Apparently, plaintiffs wished to cut down trees and build a driveway for access to their lots. The Scotts

---

[1] Richard Scott quitclaimed outlot C to his wife, Peggy Scott, in a deed dated October 8, 1992.

would not permit such action on their property. Plaintiffs filed suit on November 30, 1994, alleging that they have an equitable right to use outlot C for ingress and egress to each of their lots. The Scotts moved for summary disposition on August 23, 1995. The trial court granted summary disposition in favor of all defendants, ruling that plaintiffs could not challenge the validity of the deed from the DNR to the Scotts because the six-month statute of limitations found in MCL 211.358e; MSA 7.958(5) barred plaintiffs' claim and that the deed to the state terminated the plat covenants granting an easement to plaintiffs.

We agree with the trial court that the six-month period of limitation barred plaintiffs' claim. MCL 211.358e; MSA 7.958(5)[2] provided:

> After the expiration of 6 months from the date of any deed or contract executed under this act, no suit or proceeding shall be instituted by any person to set aside the same or the sale pursuant to which the same was executed by reason of any defect in the procedure therefor: Provided, however, That this limitation shall not apply to any deed or contract executed under this act prior to the effective date of this amendment until after the expiration of 6 months from the date this amendatory act becomes effective.

Similarly, MCL 211.431; MSA 7.661 provides that after the expiration of six months from the time a deed is made to the state pursuant to a tax sale (nonredemption), no action may be commenced to set it aside.

Plaintiffs' claim is clearly outside the six-month period of limitation because their complaint was filed

---

[2] This statute was repealed by 1994 PA 451, effective March 30, 1995. However, the deed to the state was dated June 3, 1985, and the deed to the Scotts is dated March 16, 1989. Therefore, the statute was in effect when the deeds were issued.

on November 30, 1994, the deed to the state is dated June 3, 1985, and the deed to the Scotts is dated March 16, 1989. Accordingly, the trial court properly granted summary disposition in favor of defendants on the basis that plaintiffs' claim was time-barred by MCL 211.358e; MSA 7.958(5) and MCL 211.431; MSA 7.661.

To the extent that plaintiffs argue that the state's deed is void or voidable because Bertine Carpenter never received notice of the tax sale, we must reject that argument because plaintiffs do not have standing to assert such a claim on behalf of another. In any event, plaintiffs' claim is clearly barred by the statute of limitations.

Next, the trial court found that plaintiffs had no cause of action because their easement was extinguished when the Scotts received title to the property. In other words, the trial court ruled that the deed terminated the plat covenants granting an easement in outlot C.

Our Supreme Court has held that an easement is terminated when the servient tenement is conveyed to the state. *Moceri v St Clair Shores*, 366 Mich 380; 115 NW2d 103 (1962) (even if the defendant still had an easement arising out of a dedication to the public in a subdivision plat, then it was extinguished when the subdivision became the property of the state because of nonpayment of taxes); *Young v Thendara, Inc*, 328 Mich 42; 43 NW2d 58 (1950) (the property rights of the subdivision lot owners to a subdivision park were properly characterized as easements, but such easements were extinguished when the state acquired absolute title to the property).

Additionally, MCL 211.67b; MSA 7.112(2) provides:

> Notwithstanding any other provision of law, any land sold for taxes shall remain subject to any visible or recorded easement, right of way or permit in favor of the United States, the state or any political subdivision or agency thereof or any public authority or drainage district, or granted or dedicated for public use or for use by a public utility.

This statute was enacted after the *Moceri* decision as a remedial measure to preserve easements existing in favor of the government or public utilities when the land was sold for taxes. *Boyne City v Crain*, 179 Mich App 738, 745; 446 NW2d 348 (1989). Thus, outlot C was subject to the easement in favor of the state, but not in favor of plaintiffs. Although the statute was amended to add § 67b(2) ("Notwithstanding any other provision of law, any land sold for taxes shall remain subject to any visible or recorded easement."), that provision did not become effective until December 14, 1990, which was after the state acquired outlot C. Accordingly, the trial court properly ruled that the easement was extinguished with respect to plaintiffs in this case, because only the state's easement survived the transfer of outlot C to the state.

Next, plaintiffs argue that the trial court erred in granting an easement by necessity in a limited fashion. The trial court ruled that plaintiffs were entitled to an easement by necessity, but limited the use of the easement to foot traffic only.

None of the parties disputes that plaintiffs are entitled to an easement by necessity across outlot C. Plaintiffs' land is surrounded by water and the property of others. Thus, access to a public road is limited to ingress and egress across the property of others or across the channel. The trial court granted an ease-

ment by necessity, but limited it to foot traffic and did not permit vehicular traffic, tree cutting, or the creation of a driveway. Plaintiffs contend that the trial court erred in limiting the easement in this manner. We find that the lower court record has not been developed enough factually for us to review the trial court's ruling. For example, the parties did not submit proposed uses of outlot C, they did not raise the prospect of tree cutting, and there is no evidence regarding how the Scotts utilize outlot C.

Therefore, we must remand the matter to the trial court for further proceedings. The parties shall be permitted to submit evidence regarding the use and proposed use of outlot C. The trial court should measure and define the purpose and character of the easement so that there is reasonable enjoyment by both parties. *Cantieny v Friebe*, 341 Mich 143; 67 NW2d 102 (1954). The use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land. *Id.* Although the Scotts raise valid points that the easement was intended to be limited in nature, there is simply not enough record evidence for us to effectively review the trial court's decision in this regard.

Accordingly, we remand the matter to the trial court for the parties to present evidence regarding the purpose, character, and scope of the easement so that there is reasonable enjoyment by both parties. We do not intimate that the trial court's original decision was incorrect, only that we do not have sufficient evidence in the record before us to review this question.

Last, plaintiffs claim that the trial court erred in limiting enforcement of rights of ingress and egress reserved in a deed granted by the DNR to the Scotts.

The deed from the DNR to the Scotts contains the following clause:

> [S]aving and reserving unto the people of the state of Michigan the rights of ingress and egress over and across all of the above-mentioned descriptions of land, lying along any watercourse or stream pursuant to the provisions of Section 12, of Act 280, P.A. of 1909, as amended.

Plaintiffs again contend that the trial court erred in limiting the scope of the easement. However, there is insufficient evidence in the lower court record for us to effectively review this issue. Accordingly, on remand, the parties are permitted to present evidence regarding this issue as well. The trial court should determine whether Pleasant Lake is a watercourse within the meaning of MCL 322.212; MSA 13.441, and, if so, it should then determine the public's rights of access. If the trial court determines that Pleasant Lake is a dead-end lake, then the public has no rights of access. See *McCardel v Smolen*, 404 Mich 89; 273 NW2d 3 (1978); *Bott v Natural Resources Comm*, 415 Mich 45; 327 NW2d 838 (1982); *Thies v Howland*, 424 Mich 282; 380 NW2d 463 (1985).

The trial court's grant of summary disposition in favor of defendants is affirmed in part, and we remand for further factual development regarding the scope of the easement. Summary disposition in favor of defendants Michigan Department of Treasury and the Jackson County Treasurer is affirmed in its entirety because those defendants have no interest in the nature or scope of the easement. We do not retain

jurisdiction. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.