No. 99-366

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 24

298 Mont. 176

994 P. 2d 1114

TUNGSTEN HOLDINGS, INC.,

Plaintiff and Respondent,

v.

LENA J. KIMBERLIN a/k/a LENA J. WHITSON,

JOYCE LYNN KIMBERLIN and ANTHONY KIMBERLIN,

Defendants and Appellants.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

L. Charles Evans; Evans Law Office, Libby, Montana

For Respondent:

Thomas R. Bostock; Warden, Christiansen, Johnson & Berg, Kalispell, Montana

_____

Submitted on Briefs: October 28, 1999

Decided: January 31, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1. Appellants Lena Kimberlin et al. (hereafter, the Kimberlins), appeal the judgment upon remittitur of the Nineteenth Judicial District Court, Lincoln County.

¶2. We affirm.

¶3. We restate the issues as follows:

¶4. Whether the District Court erred in determining that the easement has a two-lane width.

¶5. Whether the District Court erred in failing to limit Tungsten's use of the road to agricultural and recreational uses.

¶6. Whether the District Court erred in failing to explicitly limit Tungsten's easement to the portion of the historical road that lies on the Kimberlins' property.

¶7. Whether the District Court abused its discretion in enjoining the Kimberlins from installing a gate on the road.

Standard of Review

¶8.We review a district court's findings of fact to determine whether they are clearly erroneous. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We review a district court's conclusions of law *de novo* to determine whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## Factual and Procedural Background

¶9.Respondent Tungsten Holding (Tungsten) owns a parcel of land in Lincoln County. The Kimberlins own a parcel of land that is south of and adjacent to Tungsten's land. Tungsten has an easement over a road that traverses the Kimberlins' property and provides access to Tungsten's property.

¶10.The properties owned by the parties were originally a single homestead located approximately eight miles northwest of Libby. Andrew Merritt (Merritt) patented the homestead as Homestead Entry Survey (HES) No. 744 in March, 1929. In April, 1929, Merritt sold the northern forty-five acres of the homestead (hereafter, the northern parcel) to Albert Grambauer, whose family held the parcel until 1991, when Tungsten acquired the property. None of the documents comprising the chain of title for the northern parcel reference an easement across the southern parcel. In 1951, the Kimberlins purchased the southern parcel from Merritt. In 1973, the Kimberlins partitioned the southern parcel into two parcels, one owned by Lena Whitson (formerly Lena Kimberlin), the other owned by Anthony and Katherine Kimberlin.

¶11.The District Court found that

a.In 1909, approximately twenty years before Merritt patented the homestead, a road was built along Quartz Creek to access a Forest Service timber sale further up the drainage. The road passed through what became HES 744, ending in a trail which extended to the head of Quartz Creek. Forest Service records show the road was designated as Road No. 399 and was maintained by the Forest Service beginning in approximately 1931.

b.At the time of the severance of the property in 1929, Road No. 399 provided the only access to the northern parcel. The District Court determined that the public easement on Road No. 399 provided Tungsten's predecessors with legal access to the northern parcel. During the 1950s, the Forest Service abandoned Road No. 399.

¶12.In September, 1995, Tungsten filed a complaint in District Court seeking to quiet title to an easement across the Kimberlins' property and to a 1.25 acre parcel of land at the border between its property and that of the Kimberlins. A trial to the bench was held in January, 1998. In March, 1998, the District Court ruled for the Kimberlins. The District Court concluded that an implied easement had been created in favor of Tungsten's predecessor during the 1950s when the Forest Service abandoned Road No. 399. However, the District Court further concluded that the implied easement had been extinguished by abandonment and adverse possession. The District Court declared that Lena Whitson owned the disputed 1.25 acre parcel by adverse possession. Tungsten appealed the District Court's judgment.

¶13.On appeal, the Kimberlins conceded that there was insufficient evidence to support the District Court's conclusion that Tungsten's implied easement to the disputed 1.25 acre parcel had been extinguished by adverse possession. In an unpublished 1999 opinion, this Court addressed the remaining issue whether the implied easement that once existed in favor of Tungsten's predecessors was abandoned. Concluding that the issue of abandonment had not been raised below, we reversed the judgment of the District Court and remanded with instructions that the District Court "enter judgment quieting title to an easement across the disputed 1.25 acre parcel in favor of Tungsten by virtue of the implied easement which the court concluded Tungsten's predecessors acquired." However, we did not address whether the easement extended not only across the disputed 1.25 acre parcel but across the Kimberlins' property.

¶14.Following a hearing in April, 1999, the District Court issued its Judgment upon Remittitur. The District Court noted that "[t]he parties apparently agree that the easement which was the subject of this lawsuit did not extend only across the disputed 1.25 acre parcel but also across the entire length of Kimberlin's property. In any event, the parties declined to seek clarification of that point from the Supreme Court when they had an opportunity to do so." The District Court concluded that Tungsten is entitled to an access easement over a road that traverses the Defendants' property in a north/south direction. This road was formerly known as U.S. Forest Service Road No. 399. A portion of the road currently exists on the Defendants' property, and extends from the county road, known as "River Road," to a point on the Defendants' property. The easement herein granted shall extend to the existing road, as well as to that portion of Road No. 399 that formerly existed so as to provide reasonable access to the Plaintiff's property. The parties may agree in writing to a different, less intrusive, route across Defendants' property.

¶15. Further, the District Court ordered that the Kimberlins not interfere with Tungsten's use of the road and that the Kimberlins may not place a gate "across the road or otherwise." The District Court concluded that "[t]he easement shall be of sufficient width as to allow construction of a road that will accommodate two vehicles passing each other safely."

¶16. From that judgment upon remittitur, the Kimberlins appeal.

## Discussion

¶17. Whether the District Court erred in determining that the easement has a two-lane width.

¶18. The Kimberlins argue that the District Court erred in determining that the easement has a two-lane width. Although the District Court did not explain the basis for its determination that the easement has a two-lane width, the Kimberlins apparently assume that the District Court relied in part on testimony that the road was used for logging at the time of the severance. The Kimberlins argue that at the time of the severance and thereafter the use of the implied easement has been limited to one-way traffic on a "very narrow road." Further, the Kimberlins argue that under § 70-20-308, MCA, the only relevant historical usage of the road is that of the party who transfers the property over which an easement is implied. The Kimberlins argue that under Albert G. Hoyem Trust v. Galt, 1998 MT 300, 292 Mont. 56, 968 P.2d 1135, the extent of an implied easement is limited to its historical usage.

¶19. Tungsten responds that the District Court did not err in determining that the easement should have a two-lane width. Tungsten argues that the record shows that Road No. 399 was of sufficient width to allow logging trucks to travel the road safely and that maps described the road as an "automobile road" and "a good motor road." Tungsten argues further that because Grambauer must have expected that he would meet Merritt on the same road, the "road should have been wide enough to accommodate two vehicles to pass one another safely."

¶20. "Easements by implication arise when it is necessary to effect a presumed intent on the part of parties to a deed." Graham v. Mack (1984), 216 Mont. 165, 173-74, 699 P.2d 590, 595 (citation omitted). "To find an implied easement[ ] 'over the property of another, there must have been a separation of title, and a use before the separation took place which

continued so long and was so obvious or manifest as to show that it was meant to be permanent, and it must appear that the easement is necessary to the beneficial enjoyment of the land granted or retained.'" *Graham*, 216 Mont. at 174, 699 P.2d at 596 (citation omitted). Further, an easement by implication "is created by operation of law at the time of severance." *Hoyem*, ¶ 17 (citation omitted).

¶21. As an initial matter, we note that the District Court erred in concluding that the easement by implication arose when the Forest Service abandoned Road No. 399 in the 1950s. Rather, the easement by implication arose at the time of the severance in 1929. *See Hoyem*, ¶ 17. The public's use of Road No. 399 at the time of severance did not prevent the creation of an easement by implication. *Compare* McPherson v. Monegan (1947), 120 Mont. 454, 461, 187 P.2d 542, 545 (concluding *"[t]he easement thus created is independent of the public right and survives the extinguishment of the public easement"*).

¶22. We turn to consideration of the scope and extent of the implied easement. Section 70-17-106, MCA, provides: "**Extent of servitude**. The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired."

¶23. Section 70-20-308, MCA, further provides:

**Easements to pass with property**. A transfer of real property passes all easements attached thereto and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred for the benefit thereof at the time when the transfer was agreed upon or completed.

¶24. In Fristoe v. Drapeau (Cal. 1950), 215 P.2d 729, the court interpreted two California statutes with language identical to that in §§ 70-16-106 and 70-20-308, MCA. In *Fristoe*, a common grantor built a permanent roadway over a tract that the grantor then subdivided. The court in *Fristoe* addressed the issue whether "the trial court should have limited plaintiff's rights over the roadway to use for agricultural purposes, thereby precluding its use as a means of ingress and egress to and from a residence which plaintiff has indicated she intends to build on her property." *Fristoe*, 215 P.2d at 732. The defendants in *Fristoe* argued that the plaintiff's easement was limited to the use "being made of the roadway at the time of the severance of plaintiff's parcel." *Fristoe*, 215 P.2d at 732.

¶25. The *Fristoe* court interpreted section 1104 of the Civil Code, which is identical in

language to § 70-20-308, MCA, and concluded that it "must be read with section 806 of the Civil Code," which is identical in language to § 70-17-106, MCA. *Fristoe*, 215 P.2d at 732. The *Fristoe* court concluded that "[t]he effect of section 806 is to establish intent as the criterion, and this is in accord with the rationale of the rules governing easements by implication." *Fristoe*, 215 P.2d at 732. The *Fristoe* court held that "in determining the intent of the parties as to the extent of the grantee's rights, we are of the opinion that consideration must be given not only to the actual uses being made at the time of the severance, but also to such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance." *Fristoe*, 215 P.2d at 732.

¶26.The Restatement provides that

The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such a use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from future uses of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement. It is not to be assumed, however, that they anticipated an abnormal development. Hence, the scope of an easement created by implication does not extend to uses required by such development.

Restatement of Property § 484 cmt.b (1944).

¶27.We agree. We hold that in determining the intent of the parties regarding the extent of an easement created by implication, "consideration must be given not only to the actual uses being made at the time of the severance, but also to such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance." *Fristoe*, 215 P.2d at 732. We hold further that the extent of an easement created by implication "is to be measured . . . by such uses as the parties might reasonably have expected from future uses of the dominant tenement." Restatement of Property § 484 cmt.b (1944).

¶28. As previously discussed, the Kimberlins rely on *Hoyem* to argue that the extent and scope of an easement are "limited to its historical use at the time the easement was created." *Hoyem*, ¶ 30. However, we note that the *Hoyem* Court recognized in dicta that the scope of an easement is "limited to the uses the parties might reasonably have expected or anticipated." *Hoyem*, ¶ 31. We conclude that our holdings in the present case modify *Hoyem* by requiring, as previously discussed, that in determining the scope and extent of an implied easement, consideration be given to the intent and reasonable expectations of the parties at the time of severance.

¶29. Before reviewing the District Court's conclusions regarding the extent of the easement in the present case, we note further that the Kimberlins are correct that third parties' use of the road to log forest service land is not relevant to a determination of the historical uses of the road. Again, the District Court's judgment upon remittitur does not reveal whether it considered past logging in determining the scope of the easement. However, to the extent that the District Court may have considered logging, the District Court erred because the record indicates that such logging was not undertaken for the benefit of the northern parcel or dominant tenement. In determining historical uses at the time of severance, the relevant uses are those that benefit the dominant tenement. *Compare* Restatement of Property § 484 cmt.b (1944) (recognizing nexus between extent of easement and the uses of the dominant tenement).

¶30. With the foregoing in mind, we turn to the issue whether the District Court erred in determining that the road should be two lanes in width. We agree with Tungsten that Grambauer and Merritt would reasonably have contemplated that they would meet on the same road. We hold that the District Court did not err in determining that the parties intended that the road be wide enough to accommodate the safe passage of two vehicles, as would be "reasonably necessary for the enjoyment of [Grambauer's land]." *Hoyem*, ¶ 22 (citations omitted).

¶31. Whether the District Court erred in failing to limit Tungsten's use of the road to agricultural and recreational uses.

¶32. The Kimberlins argue that Merritt, Grambauer, and Grambauer's heirs have made "primarily" agricultural and recreational uses of the road and that the District Court therefore erred in failing to limit Tungsten's use of the road to agricultural and recreational purposes. Tungsten responds that in determining the usage of the road, the relevant time frame is not what occurred after the severance but rather the uses of the road at the time of

the severance. Tungsten argues that there is no evidence that Merritt intended Grambauer to have anything less than full and unrestricted access to Grambauer's northern parcel.

¶33.As previously noted, the use of the easement at the time of the severance does not provide absolute limits to the use of the easement. We assume rather that the parties "anticipated such uses as might reasonably be required by a normal development of the dominant tenement." Restatement of Property § 484 cmt.b (1944). The Kimberlins have not pointed to anything concerning "the circumstances existing at the time of the conveyance" that would suggest that the parties intended that the use of the road be limited to agricultural and recreational purposes. Restatement of Property § 484 cmt.b (1944). Nor have the Kimberlins shown that a normal development of the northern parcel would be limited to agricultural and recreational purposes. We hold that the District Court did not err in failing to limit the use of the easement to agricultural and recreational uses. We note, however, that whether any use of the road by Tungsten is an "abnormal development" is not before the Court. Restatement of Property § 484 cmt.b (1944).

¶34. Whether the District Court erred in failing to explicitly limit Tungsten's easement to the portion of the historical road that lies on the Kimberlins' property.

¶35.The Kimberlins argue that the District Court erred in finding that the road lies wholly within the southern parcel before it reaches the northern parcel. The Kimberlins argue that the road "occasionally meanders onto Forest Service land" and that the District Court should therefore have ruled that the implied easement only applies to the portions of the historic road that lie upon the Kimberlins' land. Tungsten responds that "there may have been portions of the road that crossed Appellants' property line into Forest Service land." Tungsten argues, however, that its easement has elements of both implied easements by existing use and implied easements by necessity. Tungsten argues further that because it cannot as a matter of law have an implied easement by necessity on the land of a third party, in this case the Forest Service, the District Court correctly concluded that Tungsten's easement lies wholly within the Kimberlins' land. The Kimberlins respond that Tungsten has not preserved this issue for review.

¶36.Contrary to the Kimberlins' position, our review of the record establishes that the Kimberlins are barred by res judicata from litigating this issue. In its March, 1998 judgment, the District Court found that the road was located wholly within the southern parcel before it reached the northern parcel. However, when Tungsten appealed that judgment, the Kimberlins did not cross-appeal the District Court's finding regarding the

location of the road within the south parcel. In Wellman v. Wellman (1982), 198 Mont. 42, 45-46, 643 P.2d 573, 575 (emphasis added) (citation omitted), we concluded that "[o]nce there has been full opportunity to present an issue for judicial decision in a given proceeding, . . . the determination of the court in that proceeding must be accorded finality as to all issues raised or *which fairly could have been raised, else judgments might be attacked piecemeal and without end*." Further, in Bragg v. McLaughlin, 1999 MT 320, ¶ 21, __ P.2d __, ¶ 21, 56 St.Rep. 1276, ¶ 21, we concluded that "[t]he doctrine of res judicata bars not only issues which were previously litigated, but also issues which could have been litigated in the prior proceeding") (citation omitted). We conclude that the doctrine of res judicata bars our consideration of this issue.

¶37.. Whether the District Court erred in ordering that the Kimberlins may not install a gate on the road.

¶38. The Kimberlins argue that the District Court erred in enjoining them from placing a gate across the road. The Kimberlins argue that a gate is necessary for the reasonable use of their land and that a gate would not unreasonably interfere with Tungsten's use of its land. Tungsten responds that there is no evidence that Merritt intended that Grambauer have anything less than the unrestricted access to the northern parcel that Merritt enjoyed. Tungsten argues that to allow a gate on the road would defeat Merritt's original intent and impose a negative servitude on Tungsten's property that is not part of the deed that Grambauer received from Merritt.

¶39. In Gabriel v. Wood (1993), 261 Mont. 170, 862 P.2d 42, the district court declined to enjoin a landowner from maintaining gates across a common road. We concluded that where the placement of a gate is not expressly prohibited by the grant of an easement or impliedly prohibited by the surrounding circumstances, a gate may be constructed across the easement *if it is necessary for the reasonable use of the servient estate* and does not interfere with reasonable use of the right-of-way.

*Gabriel, 261 Mont. at 177, 862 P.2d at 46 (citations omitted) (emphasis added). In Gabriel we determined that testimony by a landowner, Wood, and by a veterinarian established that a gate was reasonably necessary to prevent injury to the landowner's horses. Wood's testimony further established that a locked gate was reasonably necessary to prevent vandalism and theft and that people had trespassed on his property, costing him several thousand dollars. We concluded that a locked gate was reasonably necessary for the enjoyment of Wood's property. Gabriel, 261 Mont. at 177, 862 P.2d at 46.*

¶40.In the present case, we hold that the District Court did not abuse its discretion in enjoining the Kimberlins from impeding the road by means of a gate or other device. *Compare* Gabriel, 261 Mont. at 174, 862 P.2d at 44 (citation omitted) (concluding grant or denial of an injunction is within discretion of district court ). Assuming *arguendo* that a gate is not "impliedly prohibited by the surrounding circumstances," *Gabriel*, 261 Mont. at 177, 862 P.2d at 46, we conclude that the Kimberlins have pointed to no evidence in the record that would support their contention that maintenance of a gate across the road is reasonably necessary for their enjoyment of their property.

¶41.Affirmed.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ KARLA M. GRAY