SCHUMACHER v DEPARTMENT OF NATURAL RESOURCES

Docket No. 233143. Submitted March 15, 2003, at Lansing. Decided April 1, 2003, at 9:10 A M. Leave to appeal sought.

Matthew J. Schumacher, the owner of three landlocked parcels of real property in Midland County, brought an action against the Department of Natural Resources in Midland Circuit Court after the department denied the plaintiff a permit to clear a trail across state land to provide access to the plaintiff's property. The court, Thomas L. Ludington, J., granted the plaintiff an easement by necessity, but limited use of the easement to nonmotorized transportation consistent with the technology existing at the creation of the easement in the early 1900s. The plaintiff appealed regarding the court's limitation of the easement, and the department cross-appealed, arguing that the court violated the separation-of-powers doctrine in granting the easement and that any easement had been extinguished when the property reverted to the state.

The Court of Appeals *held*:

1. The scope of an easement by necessity (or implied easement) is that which is reasonably necessary for the proper enjoyment of the property, with a minimum burden on the servient estate. Michigan courts have not addressed whether the scope of an easement by necessity changes when what is reasonably necessary changes.

2. Other courts have limited the scope of an easement by necessity to present and future uses within the reasonable expectations of the original parties and have held that normal, technological development may be included within the reasonable expectation of the parties. This analysis is consistent with other authorities, and with the general purpose of an easement by necessity. The trial court erred when it strictly limited the scope of the plaintiff's easement by necessity to transportation used in the early 1900s, and the matter must be remanded for a determination of the uses reasonably contemplated by the original grantor.

3. The department's argument that the trial court violated the separation-of-powers doctrine because management of state land was assigned to the Legislature under Const 1963, art 10, § 5, and the Legislature has set forth conditions for granting easements on state land under MCL 324.2123, 324.2124, fails because statutes and

constitutional provisions apply prospectively, and none of these provisions existed when the easement in question was created in the early 1900s.

4. The department's argument that any easement was extinguished when the state regained ownership of the servient estate by tax reversion in 1932 fails because the department was the original grantor of the easement by necessity. Had the original grantor of the easement been a third party, and not the department, the tax reversion in 1932 would have extinguished the easement.

Affirmed in part, reversed in part, and remanded for a determination regarding the proper scope of the easement.

PROPERTY — EASEMENT BY NECESSITY — SCOPE.

The scope of an easement by necessity is limited to present and future uses within the reasonable expectations of the original parties, and normal, technological development may be included within the reasonable expectation of the parties.

*Dykema Gossett PLLC* (by *Zora E. Johnson*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Barbara A. Schmidt*, Assistant Attorney General, for the defendant.

Before: DONOFRIO, P.J., and SAAD and OWENS, JJ.

PER CURIAM. Plaintiff Matthew J. Schumacher appeals and defendant Department of Natural Resources cross-appeals a trial-court order granting plaintiff an easement by necessity over state land, but limiting it to nonmotorized transportation. We affirm in part, reverse in part and remand for a determination regarding the proper scope of the easement.

In 1896, the state acquired a square, nine-parcel block of land located in Midland County. The state also acquired a tenth parcel that was immediately south of the parcel in the southwest corner of the block. The other adjacent parcels immediately to the

south and north of this square, nine-parcel block were privately owned.

Between 1902 and 1904, the state sold the eastern column of three parcels, the western column of three parcels, and the tenth parcel to third parties, retaining only the middle column of three parcels (the subject property).[1] Although the sale left the subject property without ingress and egress, there is no evidence indicating that the state retained an express easement to provide access. Between 1904 and 1911, the state conveyed the subject property to Charles A. Trumbull, and there is, again, no evidence that this conveyance contemplated ingress and egress. The subject property remained undeveloped, and was eventually conveyed to plaintiff.

In 1932, the eastern and western columns of three parcels, as well as two parcels to the south of the subject property, reverted back to the state. The state purchased the third parcel (the easternmost parcel) to the south of the subject property in 1942. The state purchased two of the three parcels to the north of the subject property in 1946. The evidence suggests that the third parcel to the north (the westernmost parcel) remains privately owned.

In 1990, the state granted one of Trumbull's successors in interest to the subject property a permit to clear a trail running across state land to provide ingress and egress. However, the trail was never cleared, and the permit expired.

---

[1] For ease of reference, the subject property is shaded and labeled "X" in the appendix.

In 1995, plaintiff purchased the subject property. He applied for, but was denied, a similar permit to clear a trail running across state land.

Plaintiff brought suit against the state, contending that the subject property had an "implied easement of necessity" for ingress and egress as a result of the state's conveyances between 1902 and 1912. The trial court agreed that plaintiff was entitled to an implied easement by necessity. However, the trial court limited the scope of the easement to nonmotorized vehicles, opining that nonmotorized vehicles were the only form of transportation that the state could have contemplated when making the conveyances. The trial court rejected plaintiff's contention that the scope of the implied easement could reasonably expand with technological advances. Plaintiff appeals as of right from these rulings.[2]

Plaintiff argues that the trial court erred when it limited the easement's scope to transportation methods used when the properties were split in the early 1900s. The scope of an easement by necessity is that which is reasonably necessary for proper enjoyment of the property, with minimum burden on the servient estate. *Frey v Scott*, 224 Mich App 304, 310; 568 NW2d 162 (1997). The scope of an *express* easement cannot be unilaterally expanded. *Schadewald v Brulé*, 225 Mich App 26, 38 n 1; 570 NW2d 788 (1997). However, our courts have not clarified whether the scope of an

---

[2] The trial court rejected the state's contention that recognizing an implied easement by necessity violated the separation-of-powers doctrine because statutory provisions grant the state exclusive authority over state lands. The trial court also rejected the state's contention that the 1932 tax reversions of the servient estates extinguished any easements. The state's cross-appeal challenges these rulings.

easement by necessity, or an implied easement, changes when what is reasonably necessary changes.

The approach taken in a majority of foreign jurisdictions is to limit the scope to present and future uses within the reasonable expectations of the original parties. See, e.g., *Tobias v Dailey*, 196 Ariz 418, 421; 998 P2d 1091 (2000); *Tungsten Holdings, Inc v Kimberlin*, 298 Mont 176, 182; 994 P2d 1114 (2000); *Thompson v Whinnery*, 895 P2d 537, 541-542 and n 8 (Colo, 1995). It is noteworthy, however, that normal development may be included within the reasonable expectation of the parties. *Tobias, supra* at 1095; *Tungsten Holdings, supra* at 182-183. Similarly, in *Sides v Cleland*, 436 Pa Super 618, 625 n 5; 648 A2d 793 (1994), the court noted that a grantor "envisions certain evolutionary advances" and that, therefore, an easement need not be limited to the transportation used when it was created.

These rulings are consistent with 1 Restatement Property, Servitudes, 3d, § 4.10, which states, in pertinent part:

> [T]he holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate . . . . Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.

Thus, the Restatement contemplates allowing for reasonable technological developments, but protects the

servient estate by prohibiting unreasonable damage or interference.

The inference that the grantor intended to allow for modification of the easement as technology develops is consistent with the essence of easements by necessity—allowing individuals to make reasonable use of their property, so long as it does not unduly burden the servient estate. Thus, we believe that the trial court erred when it strictly limited the easement to transportation used in the early 1900s. This does not mean that plaintiff should have unfettered access to his property. Rather, this case must be remanded for a determination of the uses reasonably contemplated by the original grantor in the early 1900s, considering both anticipated evolutionary change and the isolated, wild condition of both properties. The easement must be limited to what is necessary for reasonable enjoyment of the property, with minimum burden on the servient estate. *Frey, supra* at 310.

On cross-appeal, defendant contends that the trial court's order violated the separation-of-powers doctrine, Const 1963, art 3, § 2, because (i) the Constitution assigned management of state land to the Legislature, Const 1963, art 10, § 5; and (ii) the Legislature set forth conditions for the granting of easements on state land, which plaintiff did not meet, MCL 324.2123, 324.2124. We review de novo, as a matter of law, whether there has been a violation of the separation-of-powers doctrine. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 582-583; 640 NW2d 321 (2001).

However, we initially note that statutes and constitutional provisions are presumed to apply prospectively, unless the drafters clearly manifested a contrary intent. *City of Lansing v Michigan Power Co,*

183 Mich 400, 409; 150 NW 250 (1914); *Boyne City v Crain*, 179 Mich App 738, 745; 446 NW2d 348 (1989). Further, "statutes affecting property rights are presumed not to operate retrospectively." *Boyne City*, *supra* at 745-746. Here, there is no indication the provisions at issue were intended to apply retroactively.[3] Because the provisions did not exist when the easement was purportedly created, we do not believe that the provisions controlled the creation of the easement at issue. Thus, the trial court's recognition of the easement could not have violated these provisions and we reject defendant's contention that the trial court's order violated the separation-of-powers doctrine.

Finally, defendant argues that any easement was extinguished when the state regained ownership of the servient estate by tax reversion. Indeed, in *Moceri v St Clair Shores*, 366 Mich 380, 384-385; 115 NW2d 103 (1962), our Supreme Court opined that an easement is extinguished when title in the servient estate reverts back to the state. Our Supreme Court based its decision on 1948 CL 211.359,[4] which provided in

---

[3] Even if the provisions applied retroactively, it does not necessarily follow that the trial court's decision violated the separation of powers. Defendant does not have exclusive jurisdiction over state land. See *Twp of Burt v Dep't of Natural Resources*, 459 Mich 659, 669-670; 593 NW2d 534 (1999). Moreover, the statutory provisions do not expressly supersede common-law principles regarding implied easements, and we will not find an abrogation of common law by implication alone. See *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). Further, defendant cites no authority supporting its suggestion that the constitutional grant of authority over state land prohibits all application of common law regarding state land. Consequently, we find further support for rejecting defendant's contention that the trial court was without authority to recognize the easement.

[4] We note that this statutory provision dates back only to 1937. Again, we presume that statutes affecting property rights operate prospectively. *Boyne City*, *supra* at 745-746. In fact, we have previously declined to re-

pertinent part that the state conveyed land that it received by tax reversion free of all encumbrances. *Id.*

However, we believe that the instant matter is factually distinguishable because defendant was the original "grantor" of the easement by necessity. Indeed, it was defendant's sale of the property to plaintiff's predecessors in title that created the easement by necessity. Accordingly, defendant's subsequent sale of the servient estate and reacquisition by tax reversion should not operate to extinguish the easement. Had the original "grantor" of the easement by necessity been a third party, and not defendant, we would agree that the tax reversion in 1932 extinguished the easement. Under these facts, the tax reversion merely returned the servient estate to its status before defendant improvidently sold it. Consequently, we are not persuaded that the easement was extinguished by the 1932 tax reversion.

Affirmed in part, reversed in part, and remanded for a determination regarding the proper scope of the easement. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

---

troactively apply amendments to the statutory provision at issue. See *id.* Here, the easement was created no later than 1911, and the tax reversion took place in 1932. Accordingly, an argument could be made that the easement could not have been extinguished on the basis of a prospectively applying statute enacted several years after the tax reversion. On the other hand, we note that similar statutes have been part of Michigan law for many years. See, e.g., 1838 RS Tit 5, ch 6, § 19; 1897 CL 3895, 3905; 1915 CL 4069, 4080; 1929 CL 3520. Moreover, in *Robbins v Barron*, 32 Mich 36, 39 (1875), our Supreme Court noted that a tax title "destroys and cuts off all liens and encumbrances previously existing against the land." Thus, the statutory provision relied on by the *Moceri* Court had a basis in Michigan law predating the tax reversion at issue.

APPENDIX

| E | D | D |
|---|---|---|
| A | X | A |
| A | X | A |
| A | X | A |
| A | B | C |

Legend:

- Plaintiff owns the parcels that are shaded and labeled "X." This is the subject property.

- The state acquired the parcels labeled "A" by tax reversion in 1896, and conveyed them to third parties between 1902 and 1912. These properties reverted back to the state in 1932.

- The state acquired the parcel labeled "B" by tax reversion in 1932.

- The state purchased the parcels labeled "C" and "D" in 1942 and 1946, respectively.

- Neither party owns the parcel labeled "E."