KELLY, J.
odissenting). Defendant village of Dexter obtained the easement that is under scrutiny in this case to improve Dan Hoey Road. Defendant Dexter Development proposed to install utility lines, street lighting, sidewalks, and landscaping on the property subject to the easement and dedicate them to the village. It also proposed to widen one private access drive on the property and consolidate into one three other private access drives that connect Dan Hoey Road with the adjacent private parcel.
The majority holds that these projects are not within the scope of the easement. To reach this conclusion, it erroneously relies on the subjective motivation for the projects. But the motivation should be irrelevant in determining whether a proposed use lies within the scope of an easement.
Because I believe that the projects in question open and improve Dan Hoey Road, they fall within the scope of the easement. Hence, I would affirm the decisions of the trial court and the Court of Appeals in favor of defendants.
FACTUAL BACKGROUND
The village obtained an “easement for the purposes of relocating, establishing, opening and improving Dan Hoey Road” from Dexter Development, which owned *53 the land. The village used the easement to relocate the road to the south and to widen it.
The property to the north of the road had been divided into four parcels. Each had direct access to the old road. To create access for them to the new Dan Hoey Road, the village installed four new access drives. The old and the new roads together with the old and new access drives are on the land that is subject to the easement. Dexter Development did not object. Moreover, plaintiff Black-hawk Development had not objected to continued use of the drives when it bought the land over which the easement runs.
Dexter Development later acquired the four parcels to the north of the road in the hope of developing them. It wished to have three of the four access roads consolidated into one, the fourth widened, and street lighting, landscaping, sidewalks, and underground utilities installed on the easement property. Eventually, it obtained a license from the village to make the improvements on the easement property itself. In its brief, Dexter Development indicated that it promised to dedicate the improvements to public use.[1]
Plaintiff Blackhawk Development, which had refused to sell to Dexter Development the parcel over which the easement runs, filed suit to enjoin construction of the improvements. Plaintiffs contended that the projects were not to improve Dan Hoey Road.
ANY PROPOSED USE OF AN EASEMENT IS REQUIRED TO BE WITHIN THE EASEMENT’S SCOPE
The purpose of an easement is determined by the parties and ascertained by applying principles similar to *54 those used when contracts are construed. 1 Restatement Property, 3d, § 4.1, comment d, p 499 (2000). The terms of the easement conveyance are given their ordinary meaning in light of the surrounding circumstances. Newaygo Mfg Co v Chicago & W M R Co, 64 Mich 114, 122-123; 30 NW 910 (1887); 25 Am Jur 2d, § 18, p 516, § 73, p 571; 1 Restatement Property, 3d, § 4.1, comment d, p 499. If a specific use is not enumerated in the easement conveyance, the surrounding circumstances may be considered to ascertain the intent of the parties. Newaygo at 122-123, 1 Restatement Property, 3d, § 4.10, comment a, p 592, and comment d, p 595. See also Thies v Howland, 424 Mich 282, 293; 380 NW2d 463 (1985).
The majority agrees with the principle enunciated by this Court in Unverzagt v Miller[2] that “ ‘ [t]he use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land.’ ” Ante at 42, quoting Unverzagt at 265.
In Unverzagt, the defendant granted the plaintiffs an easement to use the private streets of the subdivision to gain access to their cottages. The plaintiffs wanted local merchants to be able to deliver goods to them. The defendant claimed that the easement did not permit others, not social guests of the plaintiffs, to use the streets without the defendant’s permission.
This Court held that the condition laid down by the defendant unreasonably restricted the right of the plaintiffs. The proper test, we ruled, is whether it was reasonably necessary for the use and enjoyment of the *55 easement that plaintiffs could invite nonsocial guests to use the private streets. We held that holders of the easement had the right to use it limited only by what was necessary to and reasonable in its use. This included allowing nonsocial guests to make deliveries over it. It did not include use by the general public. Unverzagt at 265-267.
In this case, the easement is “for... opening and improving Dan Hoey Road.” Sidewalks, utilities and lighting systems are improvements to highways. Black’s Law Dictionary (6th ed), p 757. Despite implications to the contrary,[3] the majority opinion concedes that Dexter Development’s proposed projects are improvements. Ante at 43.[4]
It is readily apparent that landscaping and drainage ponds reasonably could improve Dan Hoey Road by controlling rainwater runoff, thereby enhancing the safety and life of the road. Access drives and sidewalks would “improve” and “open” the road by facilitating public access to and from it by vehicles and pedestrians on the north. By granting Dexter Development permission to install these improvements, the village authorized the improvement and opening of Dan Hoey Road.
The majority opinion’s factual comparison of this case with Unverzagt shows that there are limits to Unverzagt’s application here. Ante at 44-45 n 6. The easement in that case was private and the issue concerned use of an easement by invited guests of the easement holders. Here, the easement is held by a government entity and is for a road used by the general *56 public. An easement to improve and open a public road is by its terms more expansive than an easement to access a private road.
The Court’s decision in Unverzagt to prohibit general public use was necessary to fulfill the parties’ intentions to create a private easement to allow access to certain cottages. The ruling disallowed use of the easement for purposes other than access, such as picnics, because they would defeat the purpose of the easement.
In the case before us, the property owner granted an easement for public purposes to a governmental entity. The parties intended to create an easement that inherently encompassed broader uses than those allowed in Unverzagt.[5]
The surrounding circumstances confirm that the parties who created the easement intended that it could be used for projects such as those proposed by Dexter Development. The grantor’s view of the scope of the easement is more persuasive of the scope than the view of a later purchaser of the burdened estate. Crew’s Die Casting Corp v Davidow, 369 Mich 541, 546; 120 NW2d 238 (1963).[6] A party may not unilaterally change the scope of an easement once conveyed. Schadewald v *57 Brule, 225 Mich App 26, 36; 570 NW2d 788 (1997), citing Douglas v Jordan, 232 Mich 283, 287; 205 NW 52 (1925). See also Schumacher v Dep’t of Natural Resources, 256 Mich App 103, 106; 663 NW2d 921 (2003).
The village obtained an easement over the whole parcel rather than merely over the new roadbed. The Court of Appeals wrote that the village’s attorney testified
the crescent-shaped piece of land ... was meant to be used to provide rights of way to the north residences that were separated from the road. [Unpublished opinion per curiam of the Court of Appeals, issued January 27, 2004 (Docket No. 240790).]
Dexter Development was owned by the grantor of the easement. His failure to object to the access drives when he granted the easement suggests that the parties who created it understood that opening the road included building access roads.
The majority opinion fails to take proper account of the factual circumstances of this case. I would hold that, because Dexter Development’s activities will improve and open Dan Hoey Road, they are within the scope of the easement.
THE SUBJECTIVE MOTIVATION TO USE AN EASEMENT IS IRRELEVANT
Motive, in the strict sense, is distinct from purpose. Motive has been described as the desire that prompts a person to act, whereas purpose is the result to be obtained. Hudson v American Oil Co, 152 F Supp 757, 770 (ED Va, 1957). Courts do not normally inquire into *58 the motive behind the exercise of a right. Burke v Smith, 69 Mich 380, 388; 37 NW 838 (1888).
The majority opinion asserts that its analysis does not consider that these improvements were initiated by a private developer. Ante at 41. But the majority’s subsequent focus on the fact that the improvements in question are being proposed at the behest of a private developer belies this assertion. The opinion states, “[Dexter Development’s] planned use of the land covered by the easement served the exclusive purpose of furthering and enhancing [its] private complex.” Ante at 44. The majority asserts that defendant Dexter Development sought to use the village’s easement to accomplish something it could not accomplish otherwise. Ante at 37. .
These considerations are improper. The Court’s examination. of the terms of the conveyance and the surrounding circumstances should be an objective inquiry. The subjective motivations of the interested parties are irrelevant. The pertinent question is whether the improvements fulfill the easement’s purpose to improve and open Dan Hoey Road. The village is not obligated to justify its motives, as the majority and concurrence seem to require.
Also, the fact that Dexter Development rather than the village is arguing for the improvements is not remarkable. Dexter Development agreed to indemnify the village against legal action arising from the proposed improvements. Hence, it is to be expected that Dexter Development would advance the legal arguments supporting the proposed improvements in place of the village.
When viewed objectively, the purpose of the improvements is to open and improve the road. The fact that a developer seeks to implement them rather than the *59 village has no legal relevance. The improvements could be undertaken by the village directly, at its discretion. Villages may open streets. MCL 67.12. They may install sidewalks or require property owners to install them. MCL 67.8. They may also landscape. MCL 67.21.
Moreover, the village was not required to have made a decision to further improve and open Dan Hoey Road before a developer requested it, as the majority iiiiplies. Ante at 39. It could decide to install landscaping and sidewalks for aesthetic reasons at any time. Also, it could decide at any time to install the improvements in question to enhance the road’s safety, longevity, and utility as a transportation artery.
Justice YOUNG in his concurrence asserts without reference to authority that the village has an initial burden to show that the proposed improvements are within the scope of the easement. Such a burden contradicts standard practice that puts the onus on the party making a claim to articulate and substantiate it. See MCR 2.116(C)(8). In this case, the burden rightfully is on plaintiffs to assert and show that the proposed improvements exceed the scope of the easement. Stewart v Hunt, 303 Mich 161, 163; 5 NW2d 737 (1942).
Justice YOUNG appears to be suggesting as well that the village has the initial burden of showing that the underlying motivation for the improvements is consistent with the scope of the easement. This is inaccurate, and it belies his concurring argument that the parties’ motivations are irrelevant to the disposition of the case.
THE PROPOSED USES DO NOT UNREASONABLY BURDEN THE SERVIENT ESTATE
This Court has held that, where broad language in an easement permits uses not stated, those uses must not impose an additional or increased burden on the servi *60 ent estate. Crew’s Die Casting Corp, supra at 546, quoting Delaney v Pond, 350 Mich 685, 687; 86 NW2d 816 (1957). In this case, the access drives and related improvements do not increase the burden. They fit squarely within the scope of what the parties intended. Where there were four access drives, there would be only two. They would consolidate the traffic running over the access drives.
Plaintiffs’ burden would not increase by virtue of the fact that the access drives would service a commercial development rather than four residences. This Court has held that, generally speaking, a mere increase in the number of persons using an unlimited right-of-way to which land is subject is not an unlawful additional burden. Henkle v Goldenson, 263 Mich 140, 143; 248 NW 574 (1933).
In theory, Dan Hoey Road could be opened to encompass several lanes of through traffic over the entire parcel. If so opened, the increased traffic would not necessarily exceed the scope of this unlimited easement to open the road.
Under the village’s zoning requirements, Blackhawk could not build on the parcel. Blackhawk’s quiet enjoyment of the parcel would not be impermissibly disturbed by increased traffic whether on the new access drives or on several lanes of through traffic.
Plaintiffs may not be heard to complain that Dexter Development’s proposed uses involve more land than previously was in service. An easement is normally a permanent interest in land. 1 Restatement Property, 3d, § 4.1, comment b, p 498. This one contains no language preventing use of an increased amount of the land encompassed within it. Thus, I infer that the parties intended to allow the area used in the easement *61 to expand over time to maintain the easement’s utility. 1 Restatement Property, 3d, § 4.10, p 592.
Plaintiffs should have expected that improvements of the kind contemplated here could be installed at some future day. They may not be heard to complain that that day has come. They have no grounds to assert that they did not understand the broad intention of the parties who created the easement. They had record notice that the easement was in part to open and improve the road.
Plaintiffs had inquiry notice of access drives for the use of the property owners to the north, and they never questioned their propriety when they acquired the property. Although there were no distinct easements in the record for each driveway, plaintiffs had to know that the easement included access drives.
The effect of the proposed improvements on the servient estate in this case can be compared with the situation in Delaney, supra. There, the easement was between private parties for lake access. The Court correctly held that
[a] principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden. See 17A Am Jur, Easements, § 115, p 723. [Delaney at 687.]
Mooring boats and sunbathing were not inherent in providing access to the lake, and they increased the burden on the servient estates. Id. By contrast, here the proposed improvements open Dan Hoey Road and improve it, and they do not increase the burden on the servient estate.
CONCLUSION
It is irrelevant in this case that Dexter Development is a private developer. Its proposed projects are compat *62 ible with the purpose of and fall within the scope of the easement, which is to open and improve Dan Hoey Road. The actions of the parties who created the easement confirm this. Moreover, Dexter Development’s proposed improvements do not unreasonably burden plaintiffs’ estate.
I would affirm the decisions of the Court of Appeals and of the trial court. Dexter Development’s proposed projects are within the scope of the easement.

 I do not represent that Dexter Development or its owner acted as the village’s agent. Ante at 44 n 5. Rather, Dexter Development attempted to do what the village could have done with the intention of dedicating the improvements to the public.

 306 Mich 260; 10 NW2d 849 (1943).

 Ante at 44 n 5, 45 n 6.

 See also Warren v Grand Haven, 30 Mich 24, 27-28 (1874) (dedication of land to a roadway includes constructing sewers), Village of Grosse Pointe Shores v Ayres, 254 Mich 58, 64; 235 NW 829 (1931) (sewer, water, gas, lighting, and telephone systems are highway improvements).

 The majority’s discussion of Eyde Bros Dev Co v Eaton Co Drain Comm’r, 427 Mich 271; 398 NW2d 297 (1986), and Ayres, supra, does not support its determination of the scope of this easement. Ayres involved an express grant and Eyde Bros involved a highway created for public use. Both easements were geographically limited to the roadways involved.
In this case, there is no requirement that the proposed improvements be on or under the existing roadway. This easement explicitly encompasses a much larger area. As in Ayres, the improvements would be on the portion subject to the easement, and they would directly affect the road. They would open it in the case of the access drives and improve it in the case of the lighting, sidewalks, driveways, and landscaping.

 See also Schumacher v Dep’t of Natural Resources, 256 Mich App 103, 107; 663 NW2d 921 (2003), citing Tobias v Dailey, 196 Ariz 418, 421; 998 *57 P2d 1091 (Ariz App, 2000); Tungsten Holdings, Inc v Kimberlin, 298 Mont 176, 182; 994 P2d 1114 (2000); Thompson v Whinnery, 895 P2d 537, 541-542 & n 8 (Colo, 1995).