**P. BORDAGES–ACCOUNT B, L.P., Bordages Co. and Robert F. Ford, Jr., Plaintiffs,**

v.

**AIR PRODUCTS, L.P., Defendant.**

No. CIV.A.1:04–CV–128.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 23, 2004.

Anthony G. Brocato, Sr. of Law Offices of Anthony G. Brocato, Robert Keith Wade of Law Offices of Robert K. Wade, Beaumont, TX, for Plaintiffs.

Karen Bennett of Germer Gertz, LLP, Beaumont, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court are Plaintiffs' Motion for Summary Judgment (# 6) and Defendant's Cross–Motion for Partial

Summary Judgment (# 8). Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court. is of the opinion that Plaintiffs' Motion for Summary Judgment should be denied, while Defendant's Cross–Motion for Partial Summary Judgment should be granted.

## I. *Background*

Plaintiffs P. Bordages–Account B, L.P. ("P.Bordages"), a Texas limited partnership, and Bordages Company ("Bordages Co."), a Texas corporation (collectively "Bordages"), with their principal places of business in Jefferson County, Texas, own land in the county in the Joseph Probarth Survey. The land is burdened by a pipeline easement created in 1942.[1]

Plaintiff Robert F. Ford, Jr. ("Ford"), a resident of Jefferson County, Texas, owns land in the county in both the Elias Stone and the Antwine Mort Surveys. Ford's land in the Stone Survey is burdened by a pipeline easement similar to that which applies to Bordages' land in the Probarth Survey.[2]

Defendant Air Products is a foreign limited partnership created in Delaware and registered to do business in Texas. Pursuant to the first easement, Air Products operates a pipeline across land owned by Bordages in the Probarth Survey and, un-

der the second easement, it operates a pipeline across land owned by Ford in the Stone Survey. Defendant also operates a pipeline across land owned by Ford in the Mort Survey, but without an express easement. Air Products transports hydrogen in the pipelines in question.

Plaintiffs instituted this action in the 58th Judicial District Court of Jefferson County, Texas. The case was subsequently removed to federal court based on diversity of citizenship. Plaintiffs allege that the transportation of hydrogen in the pipeline exceeds the scope of the easements across the Bordages property in the Probarth Survey and the Ford property in the Stone Survey. Plaintiffs further assert that no easement exists across the Ford property in the Mort Survey. Consequently, Plaintiffs seek a "mandatory injunction"[3] requiring Air Products to remove hydrogen gas from the pipelines located on their real property and further requiring Air Products to cut off and disconnect the pipelines from its pipeline system.

There are two issues in dispute in this case. The first issue involves whether the above pipeline easements extend to the transportation of hydrogen on the Bordages land and the Ford land in the Stone Survey. Both easements allow the grantee to transport:

---

**1.** In 1942, the Philip Bordages Estate Trust, *et al.*, conveyed a pipeline easement (File No. 123107, the Philip Bordages Estate Trust, *et al.*, to Shell Pipe Line Corp., recorded in Vol. 520, page 453, Deed Records, Jefferson County, Texas) in the Joseph Probarth Survey to Shell Pipe Line Corporation ("Shell"). During the last sixty-two years, the easement has been transferred numerous times, the most recent transferee being Defendant Air Products, L.P. ("Air Products").

**2.** Regarding Ford, in 1942, Fred Colby and Eugene H. Lindsey conveyed a pipeline easement (File No. 123109, Fred Colby and Eugene H. Lindsey to Shell Pipe Line Corp.,

recorded in Vol. 520, page 458, Deed Records, Jefferson County, Texas) in the Elias Stone Survey to Shell. Similarly, during the last sixty-two years, the easement has been transferred numerous times, the most recent transferee being Air Products.

**3.** Injunctions are common remedies in meritorious Texas trespass actions when it appears that the court's assistance is necessary to prevent future injury or provide relief for a present injury to a property owner. *See, e.g., Houston Pipe Line Co. v. Brown*, 361 S.W.2d 884, 887 (Tex.Civ.App.—Houston [1st Dist.] 1962, writ ref'd n.r.e.).

oil, petroleum, gas, the products of each of the same, water, other liquids and gases, and mixtures of any of the foregoing . . . .

The second issue is whether, despite not having an express easement, Air Products has acquired an easement by prescription over Ford's land in the Mort Survey.

Following removal, Plaintiffs filed their Motion for Summary Judgment, asking the court to rule, as a matter of law, both that hydrogen is not included in the easements and that Air Products has no easement over the Ford property in the Mort Survey. Air Products then cross-filed its Motion for Partial Summary Judgment, requesting the court to declare that, as a matter of law, hydrogen is a gas and is, therefore, included in the easements in question. In addition, in its response to Plaintiffs' Motion for Summary Judgment, Air Products argues that, while it does not have an express easement on the Ford land in the Mort Survey, it has an easement by prescription over that land for the same use as that under its express easements.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material

fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir. 2002); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106

S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996); *see Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001); *Colson*, 174 F.3d at 506.

The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir.2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir.2002); *Harken Exploration Co.*, 261 F.3d at 471. The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999);

*accord Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Furthermore, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.' " *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N. Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex*

*Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. Texas Lottery Com'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

**B.** *Issue One: Interpretation of the Easements' Terms*

**1.** *Governing Law*

■ A federal court sitting in diversity applies Texas law in the interpretation of contracts negotiated, drafted, and executed in Texas. *See H.E. Butt Grocery Co. v. National Union Fire Ins. Co.,* 150 F.3d 526, 529 (5th Cir.1998) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Fundamental principles of contract construction and interpretation apply when considering an express easement's terms. *See Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002). This case, therefore, requires application of Texas contract law.

**2.** *Rules of Construction*

Texas employs several contract construction principles relevant to this dispute.

**a.** *"Four Corners Rule" and Related Canons of Construction*

■ Texas courts look first to the written instrument as a whole, its "four corners," to ascertain the intent of the parties. The "four corners rule" was described succinctly by a judge of this court:

In construing an easement, "the primary duty of a court is to ascertain the intent of the parties by a fundamental rule of construction known as the 'four corners rule' .... In so doing, the court is not looking for the subjective intent of the parties ... instead, it is the objective intent, the intent expressed or apparent in the writing that is sought."

*Corley v. Entergy Corp.,* 246 F.Supp.2d 565, 574 (E.D.Tex.2003) (quoting *Bennett v. Tarrant County,* 894 S.W.2d 441, 446 (Tex.App.—Fort Worth 1995, writ denied)). Thus, the court must enforce unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981).

In applying the "four corners rule" to an easement, the court must give the granting language its "plain, grammatical meaning." *Corley,* 246 F.Supp.2d at 573 (quoting *De-Witt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999)). Particularly "[w]hen the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Krohn,* 90 S.W.3d at 701.

■ In addition, under the "four corners rule," the intention of the parties is to be gathered from the instrument as a whole. *See Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Ervay, Inc. v. Wood,* 373 S.W.2d 380, 384 (Tex. Civ.App.—Dallas 1963, writ ref'd n.r.e.). The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994); *accord Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex.1965). Each part should be given full effect. *See Lenape Resources Corp. v. Tennessee Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex. 1996); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987). The court must "examine and consider the entire writing in an effort to harmonize and give

effect to all the provisions of the contract so that none will be rendered meaningless." *Aland v. Faison Assocs.*, No. 3:97–CV–2482–P, 1999 WL 500228, at *5 (N.D.Tex. July 14, 1999) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)); *see also R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980) (citing *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 53 (Tex.1964); *Steeger v. Beard Drilling*, 371 S.W.2d 684, 688 (Tex.1963)).

■ Related canons of construction guide courts when applying the "four corners rule." Whenever feasible, an agreement is to be interpreted in a manner than renders performance possible rather than impossible. (*See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 722 (5th Cir.1995); *see also Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 839 (S.D.Tex.1999), *aff'd*, 234 F.3d 28 (5th Cir. 2000)); *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984). Furthermore, deed construction favors an interpretation that allows the greatest freedoms in property use. *See Corley*, 246 F.Supp.2d at 573 ("[c]ourts construe [an easement's] language against the grantor so as to give the grantee the greatest estate permissible under the instrument") (citing *Temple–Inland Forest Prods. Corp. v. United States*, 988 F.2d 1418, 1421–22 (5th Cir.1993)); *MGJ Corp. v. City of Houston*, 544 S.W.2d 171, 174 (Tex.Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.); *Gibson v. Watson*, 315 S.W.2d 48, 53 (Tex.Civ.App.—Texarkana 1958, writ ref'd n.r.e.) ("[a]nother applicable rule is that should there be any doubt as to the proper construction of a deed, that doubt should be resolved against the grantors, whose language it is, and be held to convey the greatest estate permissible under its language") (citing *Curdy v. Stafford*, 88 Tex. 120, 30 S.W. 551, 552 (1895)).

### b. *Assessing Ambiguity*

■ When an easement's terms remain susceptible to more than one meaning, the easement is ambiguous. *See Corley*, 246 F.Supp.2d at 573. In the case of easements, "[t]he question of whether an easement is ambiguous and the interpretation of an unambiguous easement are questions of law appropriate for consideration on motion for summary judgment." *Id.* at 572 (citing *Hall v. Lone Star Gas Co.*, 954 S.W.2d 174, 176 (Tex.App.—Austin 1997, pet. denied)).

Ambiguity does not arise, however, merely because the parties advance conflicting interpretations of a contract. *See Forbau*, 876 S.W.2d at 134; *Crown Constr. Co. v. Huddleston*, 961 S.W.2d 552, 556 (Tex.App.—San Antonio 1997, no pet.). For ambiguity to exist, both interpretations must be reasonable. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Huddleston*, 961 S.W.2d at 555. "When a court concludes that contract language can be given a certain definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law." *Parks*, 1 S.W.3d at 100.

### c. *Extrinsic Evidence*

■ When a contract remains ambiguous despite application of the foregoing principles, courts may then consider extrinsic evidence to ascertain the parties' intent. *See Lenape Resources Corp.*, 925 S.W.2d at 574; *Steeger*, 371 S.W.2d at 688. Nevertheless, if a contract is unambiguous, extrinsic evidence "will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *see also Lewis v. East Tex. Fin. Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941); *accord Na-*

*tional Union Fire Ins. Co.*, 907 S.W.2d at 521 n. 5.

### C. Terms of the Easement

#### 1. Easement Grant Presumptively Includes Hydrogen

■ The terms "gas" and "other liquids and gases" are not specially or specifically defined in the subject easements. Accordingly, the "four corners rule" requires the court to impart to these terms their plain, ordinary meaning. Hydrogen unquestionably is—and is generally understood to be—a gas. Therefore, unless Texas law itself supplies a contrary definition, or judicially noticeable facts show that it is impossible for the original parties to have intended for hydrogen to be transported under the easements, the court must conclude that the easements are unambiguous and clearly include hydrogen as a permitted substance.

#### 2. Texas Law Does Not Limit the Term "Gas" to Natural Gas

■ Plaintiffs argue that the court cannot impart the ordinary meaning of the terms "gas" and "gases" to the easements because Texas law specifically limits their meaning to natural gas. While some of the authorities Plaintiffs cite raise the possibility that Texas law defines "gas" to mean natural gas, at least one such authority yields the opposite result. Plaintiffs cite the *Texas Natural Resources Code* for definitions of "gas," which are equated with natural gas for purposes of the code. *See* TEX. NAT. RES. CODE ANN. §§ 85.001, 86.002, & 91.001 (West 2001). Plaintiffs, however, also argue, relying on established

Texas case law, that Texas law regards gas to include all constituent elements as they come from the petroleum well. *See Lone Star Gas Co. v. Stine*, 41 S.W.2d 48, 49 (Tex. Comm.App.1931, judgment adopted).[4]

Settled case law holds that "natural gas" includes all constituent elements composing natural gas. *See id.* at 49 ("[i]t is undisputed in the evidence that the term 'natural gas' includes numerous elements or component parts, but the very language of conveyance is such as to include therein all these component parts which were in gaseous form when they came from the wells"). It is well recognized that hydrogen is a component of natural gas. A prominent oil and gas treatise states: "[t]he chemical composition of both natural gas and petroleum differs greatly from one sample to another, although the chief constituents are always carbon and *hydrogen.*" 1 SUMMERS O. & G. § 1.3 (3d ed.2004) (emphasis added). In addition, a recent newspaper article discussing hydrogen-powered vehicles notes: "The soon to-be-released study by Argonne National Laboratory ... finds that *cracking hydrogen molecules from natural gas* ... emits larger quantities of two problematic air pollutants than refining gasoline does ...." Jeffrey Ball, *Car Makers Split Over Timing of Hydrogen–Powered Vehicles*, WALL ST. J., Feb. 26, 2004, at B1 (emphasis added). Therefore, even if the court were to embrace *arguendo* Plaintiffs' premise that Texas law generally limits the definition of gas to mean only natural gas, hydrogen as a component would still be included.

---

**4.** In an opinion construing the same easement language as that at stake in this action, however, this court cited the *Lone Star* case for the opposite proposition to the one Plaintiffs advocate in their Motion for Summary Judgment. *See C & E Land Co. v. Air Products, L.P.*, No. 04–40603 (5th Cir. filed May 19,

2004). The court's reasoning in that case is the same as here and indicates that, in Texas, "gas" includes hydrogen as a component. In addition, that case involved the same attorneys, the same defendant, and the same easement language as in this action.

Plaintiffs cite no other Texas authority with respect to this issue. Analogous cases from other jurisdictions, however, hold that the definition of "gas" is not limited to "natural gas" when preceded by terms such as "oil." For instance, the United States Court of Appeals for the Tenth Circuit has held that "the word oil and the word gas have equal status." *Northern Natural Gas Co. v. Grounds,* 441 F.2d 704, 711 (10th Cir.1971) (citing *Navajo Tribe of Indians v. United States,* 176 Ct.Cl. 502, 364 F.2d 320, 325, 327 (1966)). Similarly, the Court of Federal Claims, in a suit by an Indian tribe seeking additional compensation for oil and gas rights acquired by the United States within an Indian reservation, determined that helium was included in an instrument conveying "all oil and gas deposits." *Navajo Tribe of Indians,* 364 F.2d at 327. The court reasoned that because there was "no express reservation in the instrument in question of non-hydrocarbon or noncombustible gases, ... we decline to create such a reservation." *Id.; see also Exxon Corp. v. Lujan,* 970 F.2d 757, 760 (10th Cir.1992) (holding, after detailed analysis, that "natural gas" includes carbon dioxide gas).

Hence, the court must reject Plaintiffs' contention that, in Texas, "gas" necessarily means only natural gas.

3. *Transmission of Hydrogen Does Not Contravene the Parties' Intent*

■■ Plaintiffs assert that the original parties never intended for pipelines installed under the subject easement to carry hydrogen. That contention is based on the alleged fact that in 1942—when the easements were granted—pipeline transportation of hydrogen was unknown.[5]

Application of the "four corners rule" results in a determination that the easements at issue are not ambiguous. As noted, lack of ambiguity ordinarily prevents consideration of extrinsic evidence to give the easement a meaning distinct from that which it manifestly contains. Further, the law imputes to original contracting parties the notion that advances in technology might expand the options of what kinds of liquids and gases could be transported through pipelines.

The *Restatement (Third) of Property (Servitudes),* which has been cited as authority in Texas cases as recently as 2002 (*see Krohn,* 90 S.W.3d at 700–03, 709), states the following in a section entitled "Interpretation of Servitudes":

§ 4.10 Use Rights Conferred by a Servitude

Except as limited by the terms of the servitude ... the holder of an easement or profit ... is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefitted by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.10 (2003). A comment to this provision succinctly amplifies the concept:

---

**5.** Plaintiffs have submitted five Applications for Amended Certificate of Authority, dating from June 1937 to June 1967, each of which delineates Shell's business purpose and the purposes for which the company's pipelines

would be utilized. Among the uses indicated in the applications over the years is transportation of petroleum, petroleum products, oil, oil products, and gas. Hydrogen is not specifically mentioned.

The uses that are reasonably necessary for enjoyment of an easement change over time as technology changes . . . .

*Id.*, cmt. c. The "illustrations" under this Restatement section describe easements: (1) originally conveyed to allow for passage of horses and carts that later allowed for automobiles; (2) deeds originally meant for wooden electric poles that subsequently permitted taller steel structures instead; and (3) agreements initially intended for telephone poles that later allowed for transmitters on the poles to accommodate cellular telephone transmissions, so long as the improvements did not damage or unreasonably interfere with the enjoyment of the servient estate. *See id.*, cmt. f, illus. 11–13.

Under this view, transporting hydrogen through pipeline easements would not contravene the parties' intent even though that specific use may not have been foreseen. First, the transportation of gases falls within the general purposes for which the easements were created. Second, Plaintiffs neither allege nor present evidence that transporting hydrogen through pipelines on their lands damages the land or unreasonably interferes with Plaintiffs' enjoyment. Third, if technological advances of the type enumerated in the illustrations to the Restatement are permissible, so, surely, is the non-intrusive transmission of hydrogen gas through the pipelines under Plaintiffs' land. *See Krohn*, 90 S.W.3d at 701–02 (arguing that the common law allows flexibility in an easement-holder's rights so long as changes in the holder's use fall within the purposes for which the easement was created); *see also Schumacher v. Department of Natural Resources*, 256 Mich.

App. 103, 663 N.W.2d 921, 924 (2003) (allowing for motorized transport over land despite fact that at time of original easement's conveyance only non-motorized vehicles existed).

For the foregoing reasons, Plaintiffs' argument based on the parties' intent is unpersuasive.

### 4. *Ejusdem Generis*

 Plaintiffs attempt to bolster their motion for summary judgment by invoking rules of construction designed to resolve ambiguous written clauses. Plaintiffs' principal argument relies on the doctrine of *ejusdem generis*, a principle of limitation employed to determine inclusivity of general terms following a list of particulars. *Ejusdem generis* is defined as:

A canon of construction that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed.

BLACK'S LAW DICTIONARY 535 (7th ed.1999). Reliance on this concept, however, is inappropriate when seeking summary judgment, for *ejusdem generis* is usually employed only when there is an ambiguity in a contract.[6] Hence, by invoking *ejusdem generis* to support their interpretation of the easement, Plaintiffs essentially cede the existence of a fact issue. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 122 S.W.3d 922, 930 (Tex.App.—Corpus Christi 2003, pet. filed) (stating that contractual ambiguities necessarily give rise to questions of fact, thereby defeating any motion for summary judgment).

---

**6.** *See Garcia v. United States*, 469 U.S. 70, 74, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (" '[t]he rule of *ejusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty' ") (citing *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980)); *Nicol v. Gonzales*, 127 S.W.3d 390, 395 (Tex.App.—Dallas 2004, no pet. h.) (citing *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1995, no writ)).

The overwhelming consensus in case law as well as scholarly literature supports the proposition that *ejusdem generis* applies only when there is an ambiguity. *See, e.g.,* Keith A. Rowley, *Contract Construction and Interpretation From the 'Four Corners' to Parol Evidence (and Everything in Between),* 69 MISS. L.J. 73, 153 n. 244 (1999) ("[t]he doctrine of *ejusdem generis* only applies to an ambiguous contract"); *see also Garcia,* 469 U.S. at 74, 105 S.Ct. 479; *Nicol,* 127 S.W.3d at 395; *Hussong,* 896 S.W.2d at 325. There are some Texas cases, however, that appear to apply the doctrine without first making a formal declaration of ambiguity. *See, e.g., InterFirst Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882, 895–96 (Tex.App.—Texarkana 1987, no writ); *Home Ins. Co. of N.Y. v. Enloe,* 287 S.W.2d 235, 238 (Tex.Civ.App.—Amarillo 1958, writ ref'd n.r.e.). Nevertheless, because there is no ambiguity in the easements at issue, *ejusdem generis* analysis appears to be inapposite. Notwithstanding this obstacle, as Plaintiffs place great reliance on *ejusdem generis* and some Texas cases are vague as to the appropriate circumstances for utilizing the doctrine, the court will consider the merits of this argument.

### a. No Authority Supports Application of Ejusdem Generis

Plaintiffs cite no case, Texas or otherwise, applying *ejusdem generis* to language involving "oil, petroleum and gas" so as to exclude industrial, non-hydrocarbon or non-combustible gases. Instead, Plaintiffs rely on a Texas case decided nearly a century ago, which concerned a railroad right-of-way deed. *See Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co.,* 106 Tex. 94, 157 S.W. 737, 739–40 (1913). That deed conveyed the right to take and use "timber, earth, stone and mineral" for the purpose of constructing, operating, and maintaining a railroad right of way. The court held that the deed did not permit the grantee to produce and extract oil. Texas law clearly established that railroad right-of-way conveyances, whether established by agreement or eminent domain, did not include fee-simple estates or rights not necessary for or incidental to railway purposes. In addition, the court conducted an *ejusdem generis* analysis to demonstrate that, in context, the general term 'mineral,' when preceded by particular terms 'timber,' 'earth,' and 'stone,' should be applied to the same class of materials—items that may be found upon or near the surface of land, such as gravel and the like. *Id.* at 740. The deed at issue did not include "oil, petroleum, or gas" language, and its unique context makes application of its reasoning inappropriate here.

Furthermore, directly contrary authority exists in other jurisdictions. In *Northern Natural Gas Co.,* the Tenth Circuit held that application of *ejusdem generis* was improper to allow the term "oil" to limit the meaning of "gas" in a lease for "oil and gas." *See* 441 F.2d at 711. Similarly, in *Navajo Tribe of Indians,* the Court of Federal Claims declined to exclude helium from an oil and gas lease, stating: "We see no reason to apply *ejusdem generis* to a phrase such as oil and gas." 364 F.2d at 327. A federal district court in Missouri, refusing to apply the limiting tool of *ejusdem generis,* noted that when grantors wish to limit the scope of their grant in such areas as oil and gas, they can easily write "and like minerals" to convey that they disfavor an expansive reading of the conveyance's provisions. *See United States v. 371.93 Acres of Land,* 575 F.Supp. 756, 758 (E.D.Mo.1983).

Finally, Texas case law supports the premise that mere use of the terms "oil," "petroleum," and "gas" does not automatically evoke a restrictive definition. In *Southland Royalty Co.,* the Texas Supreme Court was confronted with the task

of determining the scope of a lease granting "oil, potash, and other minerals." 378 S.W.2d at 54. The court, commenting that "the doctrine of *ejusdem generis* as applied to minerals has never been accepted in this state," held that the phrase "other minerals" included gas. *Id.* (citing *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 805 (1940) (holding that "a reservation of 'minerals' is sufficient as a matter of law to include oil and gas, although at the time the reservation was made coal or other solid mineral had been produced in the community, or state, but oil and gas had not")). Although at the time of contracting, oil and gas were not within the contracting parties' contemplation, the *Southland* court nonetheless held that "other minerals" was broad enough to encompass oil and gas. *See id.*

b. *Ejusdem Generis Does Not Exclude Hydrogen in Any Event*

■ The result advocated by Plaintiffs would not be reached even if the court were to assume *arguendo* that this is an appropriate case for application of *ejusdem generis.* When defining that doctrine, *Black's Law Dictionary* gives the following example:

[T]he phrase *horses, cattle, sheep, pigs, goats, or any other barnyard animal*—despite its seeming breadth—would probably be held to include only four-legged, hoofed mammals . . . .

BLACK'S LAW DICTIONARY 535 (emphasis in original). By this reasoning, if "chickens" were added to the enumerated list of barnyard animals, *ejusdem generis* could probably not be employed to limit the term *"any other barnyard animal"* to four-legged, hoofed mammals. The phrase would then most likely be expanded to include any barnyard animal, such as turkeys, domestic ducks and geese, guineas, and emus.

In the present case, the relevant language of the easements includes: "the transportation of (1) oil, (2) petroleum, (3) gas, (4) the products of each of the same, (5) water, (6) other liquids and gases, and (7) mixtures of any of the foregoing . . . ." (numeration supplied). The sequence of this language—considered in terms of whether the enumerated terms are particular or general—is as follows: (1) particular-oil; (2) particular-petroleum; (3) particular-gas; (4) general-the products of each of the same; (5) particular-water; (6) general-other liquids and gases; (7) general-mixtures of any of the foregoing. Under *ejusdem generis,* the first general term, "products," should be limited by the particular terms preceding it. Here, however, "products" is followed by yet another particular term, "water," which is then followed by the general phrases "other liquids and gases" and "mixtures of any of the foregoing."

If the court were to ignore earlier cited precedent and conclude via application of *ejusdem generis* that the first occurrence of "gas" does not encompass hydrogen, the phrase "other liquids and gases" surely does. It is broadened by the placement of the term "water" before it. As the provision is written, "other liquids and gases" must be limited by all of the particular terms that precede it. Water is not similar to oil, petroleum, or gas, just as chickens are dissimilar to four-legged, hoofed mammals. Thus, applying *ejusdem generis* to interpret "other liquids and gases" in light of "oil, petroleum, gas, . . . [and] water" broadens the scope of what "other liquids and gases" encompasses. As broadened, application of *ejusdem generis* does not preclude hydrogen from being considered as another gas, just as it would not preclude turkeys, domestic geese, *etc.,* from being considered as other barnyard animals when chickens are listed in the exemplar phrase.

D. *Issue Two: Easement by Prescription*

With regard to the second issue in dispute, Plaintiffs argue that because Air Products has no easement on the Ford property in the Mort Survey, it is trespassing on Ford's land by operating the pipeline. Plaintiffs further contend that Air Products cannot show that a genuine issue of material fact exists as to all the elements necessary to establish an easement by prescription, particularly whether Air Products' use meets or exceeds the applicable statutory period of ten years.

Defendant Air Products counters that it holds an easement by prescription in the Mort Survey and, therefore, is permitted to transport hydrogen through its pipeline on Ford's land. Defendant stresses that, at a minimum, it has raised a fact question as to the elements required to determine if it has an easement by prescription over this land and urges this court to deny Plaintiffs' Motion for Summary Judgment. Air Products further argues that it can tack the period of its pipeline use to that of prior pipeline operators, thereby exceeding the statutory period required for easements by prescription.

1. *Criteria for Establishing Prescriptive Easement*

As with the interpretation of the terms of the easements at issue in this action, Texas law governs the question of whether Plaintiffs are entitled to summary judgment on their trespass claims. *See Morin v. Moore*, 309 F.3d 316, 324 (5th Cir.2002) (citing *Erie*, 304 U.S. at 78–79, 58 S.Ct. 817). Under Texas law, a "trespasser on land" is "one who, not having title thereto, without consent of the true owner, makes entry thereon." *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex.Civ. App.—Beaumont 1934, writ ref'd).

If one who enters the land owns an easement by prescription over the land,

however, the entry is not a trespass. Nevertheless, prescriptive rights are disfavored by the law. *See Maricle v. Hines*, 247 S.W.2d 611, 612 (Tex.Civ.App.—Fort Worth 1952, no writ). A claimant acquires an easement by prescription only if the use is: (1) open and notorious, (2) continuous, (3) exclusive, and (4) adverse (5) for the requisite period of time. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex.1979); *Toal v. Smith*, 54 S.W.3d 431, 435 (Tex. App.—Waco 2001, pet. denied); *Davis v. Carriker*, 536 S.W.2d 246, 250 (Tex.App.—Amarillo 1976, no writ).

Use that is "open and notorious" under Texas law occurs through "such open or visible act or acts that knowledge on part of the landowner will be presumed." *Rocha v. Campos*, 574 S.W.2d 233, 237 (Tex.App.—Corpus Christi 1978, no writ). For use to be continuous, it must have "commenced and continued without break." *Evans v. Scott*, 37 Tex. Civ.App. 373, 83 S.W. 874, 876 (Tex.Civ. App.—Lamar County, 1904, no writ). To be exclusive, the use "must exclude, or attempt to exclude, all other persons, including the true property owner, from using" the property. *Tiller v. Lake Alexander Props., Ltd.*, 96 S.W.3d 617, 624 (Tex. App.—Texarkana 2002, no pet.) (citing *Stallman v. Newman*, 9 S.W.3d 243, 249 (Tex.App.—Houston [14th Dist.] 1999, pet. denied)). The fourth element, adversity to the owner's claim of right, requires that the claimant's use not be permissive. *See Vrazel v. Skrabanek*, 725 S.W.2d 709, 710 (Tex.1987).

Finally, the use must be continuous for the statutory period, which, under Texas law, is ten years. *See Doll v. Hurst*, No. 03–02–00576–CV, 2003 WL 21939711, at *5 (Tex.App.—Austin Aug.14, 2003, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.023 (West 2002)). If a claimant has met the other elements of its claim but

cannot meet the statutory term through its own use, it is permitted under Texas law to tack its period of use to that of a prior user or users, provided that there is privity of estate between them. *See McAnally v. Texas Co.*, 124 Tex. 196, 76 S.W.2d 997, 1001 (1934); *Doll*, 2003 WL 21939711, at *5 n. 9. Privity of estate is defined as "transfer and delivery of possession from one possessor to the next." *Fish v. Bannister*, 759 S.W.2d 714, 717 (Tex.App.—San Antonio 1988, no writ).

### 2. *Availability of Summary Judgment*

Air Products bears the burden of proof at trial to establish that it owns an easement by prescription over the Ford land. *See Hollingsworth v. Williamson*, 300 S.W.2d 194, 197 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e). Failure to satisfy any one element required to establish this type of easement is fatal to the claim. *See Stark v. Morgan*, 602 S.W.2d 298, 305–06 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e); *Dailey v. Alarid*, 486 S.W.2d 620, 623 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e).

In order to defeat summary judgment, therefore, Air Products must make a showing sufficient to raise a fact issue with regard to each element, as all elements are essential to establish an easement by prescription. Circumstantial evidence of a party's adverse use, or evidence inferred from the circumstances, may be sufficient to make this showing. *See Schultz v. Shatto*, 150 Tex. 130, 237 S.W.2d 609, 613 (1951). Such evidence, however, must be "clear and positive" and should be "strictly construed." *Heard v. State*, 146 Tex. 139, 204 S.W.2d 344, 349 (1947); *Hollingsworth*, 300 S.W.2d at 198.

 In this instance, Air Products relies principally upon an affidavit from Rick J. Thibodeaux ("Thibodeaux"), a real estate specialist for Air Products since 1992. This affidavit raises a genuine issue of material fact regarding the open and notorious requirement because it asserts, under oath, that the pipeline easement has been clearly marked on Ford's land by virtue of Air Products's having removed trees in a twenty-foot-wide strip along the pipeline. Additionally, Defendant maintains that Ford was on constructive notice of the pipeline when he purchased the property in 1998, based on deed provisions that placed the burden on Ford to take the property subject to "any visible unrecorded easements, if any." Finally, Thibodeaux states that Ford was on actual notice of the pipeline through conversations with Ford in 2001.

Plaintiffs argue that, as a matter of law, mowing the grass is insufficient to "constitute adverse possession." *See Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex.1985). In *Bywaters*, the Texas Supreme Court held that mowing grass, planting flowers, and maintaining a hedge were insufficient both to provide evidence of adverse possession and to establish "notice of an exclusive, adverse possession." *Id.* As noted above, however, Air Products has other means of satisfying the notice prong of the prescriptive easement test.

 As to whether Air Products's use has been continuous and without interruption, Thibodeaux asserts that for sixty years the pipeline has been continuously operated and maintained. In addition, regarding the exclusivity requirement, Thibodeaux points out that, based on his knowledge and experience, "at no time has [sic] the pipeline and its easements been abandoned or out of use or maintenance in the over sixty years" the pipeline has existed. Thibodeaux further states that Air Products has maintained the easement and pipeline continuously by mowing the grass regularly and flying over the entire pipeline by airplane at low altitude. Such evi-

dence is sufficient to raise an issue of material fact as to the adversity element.

■ According to Thibodeaux's affidavit and other documents Air Products has submitted, Defendant began using and maintaining the pipeline in 1995, which would fall short of meeting the required ten-year statutory minimum for obtaining an easement by prescription. Although Air Products has not maintained and used the pipeline on the Ford land for the ten-year period, it has, nevertheless, raised an issue of fact as to whether it can tack the time the prior pipeline operator used and maintained the pipeline. Air Products has indicated that it received delivery of possession from a prior alleged easement holder, who used the pipeline consistent with an easement by prescription, such that both uses together meet or exceed the mandatory ten-year period. Based on Thibodeaux's assertions, Air Products could arguably tack its use to that of three other users, totaling some fifty-three years of use.

Plaintiffs dispute this notion, claiming that Air Products has presented no proof that the prior purported easement holder, Cayuse Pipeline, Inc., "conveyed an easement for this pipeline or delivered possession of such an easement to Air Products." As stated above, Defendant need only raise an issue of fact as to whether the prior easement holder delivered possession to Air Products, not whether the prior easement holder conveyed an easement to Air Products for the Ford land. Thibodeaux has stated both that the prior easement holder "sold" the pipeline to Air Products and that the prior pipeline operator and Air Products have operated the pipeline for more than ten years, which, taken together, is sufficient to meet the

minimum time requirement for an easement by prescription.

Nonetheless, Plaintiffs contend that there is no privity of estate between the prior easement holder and Air Products sufficient for tacking because there was no conveyance of a dominant estate to Air Products. Plaintiffs appear to rely upon one Texas case for a misapprehension regarding privity of estate. *See First Nat'l Bank of Marshall v. Beavers,* 602 S.W.2d 327, 329 (Tex.App.—Texarkana 1980, no writ). *Beavers* does not pronounce a rule of law requiring a dominant estate to be conveyed for there to exist privity of estate, as Plaintiffs argue. If anything, the case stands for the opposite proposition, namely: "A parol delivery of possession from a prior to a later occupant will suffice to tack the possessions if there is an actual transfer of possession." *Id.* (citing *McAnally,* 76 S.W.2d at 1001). Simply because the prior pipeline operator did not convey a dominant estate does not mean that there is no privity of estate between the prior pipeline operator and Air Products.[7]

Finally, Plaintiffs assert that Air Products has failed to demonstrate that its use of the pipeline on the Ford land is exclusive. Plaintiffs contend that there are many pipelines in the area of Ford's land such that "at least two of the pipelines in the vicinity lie upon Air Products' pipeline." This argument is based on an affidavit from Sam O. Smith ("Smith"), a land title and abstract expert and current president of Smithcorp Real Estate Services, L.C., which references documents indicating the existing overlap. Plaintiffs may be correct that Air Products's use of the pipeline on the Ford land is not exclusive; however, at the summary judgment stage,

---

7. Additionally, Plaintiffs argue that, for Air Products to be able to tack its use to that of the prior pipeline operator, the prior pipeline operator must have used the pipeline to transport hydrogen, like Air Products. Plaintiffs, however, have cited no authority indicating that the scope of the pipeline's use must be construed so narrowly.

Air Products need only raise an issue of fact as to whether its use has been exclusive for the requisite time. Air Products has done so through the affidavit of Thibodeaux. Although it may conflict with the affidavit of Smith, it is for the finder of fact to resolve any discrepancies.

The remainder of Plaintiffs' arguments regarding their trespass claim merely underscore the fact that, at trial, the burden of showing the existence of an easement rests on Air Products. In this situation, Air Products has met its burden to raise a genuine issue of material fact as to each element necessary for obtaining an easement by prescription in the Ford land, thereby precluding summary judgment on Plaintiffs' trespass claim.

### V. *Summary and Conclusion*

The foregoing analysis leads to the following conclusions: (1) Air Products owns easements allowing it to transport by pipeline "gas" and "other gases" and products and mixtures thereof over the Bordages land in the Probarth Survey and over the Ford land in the Stone Survey; (2) the easement provisions under construction are unambiguous as a matter of law and include hydrogen via application of the "four corners rule," requiring terms to be given their ordinary meaning; (3) Texas law does not require courts to give the terms "gas" and "other ... gases" a construction different from their ordinary meanings, which indisputably encompass hydrogen; (4) the fact that pipeline transportation of hydrogen represents a technological advance occurring after the execution of the easements does not demonstrate, as a matter of law, that hydrogen transportation violates the parties' intent because the new use is consistent with the original purposes of the easements, and neither unreasonably damages the land nor impairs Plaintiffs' enjoyment of it; (5) *ejusdem generis* is inapplicable under the circumstances, or,

alternatively, applying *ejusdem generis,* hydrogen is not precluded from inclusion in the phrase "other liquids and gases," as used in the easements; and (6) Air Products raises genuine issues of material fact with respect to its claim that it has an easement by prescription in the Ford land in the Mort Survey sufficient to survive Plaintiffs' Motion for Summary Judgment.

These conclusions compel entry of judgment for Defendant Air Products as a matter of law against the Bordages parties. Accordingly, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendant's Motion for Partial Summary Judgment is GRANTED.

IT IS SO ORDERED.